WILSON HALONA, CECIL LARGO

WILLIS H. PETERSON, RAYMOND R. SMITH

MARY WALLACE AND JIMMY WOODY

vs.

PETER MACDONALD, Individually and in his capacity

As Chairman of Navajo Tribal Council; and ELDON HANSEN

in his capacity as Controller of the Navajo Nation

Decided on May 18, 1978

Donald Benally, Shiprock, New Mexico, for Plaintiffs-Appellees Halona, Largo, Peterson, Smith and Woody

Richard Hughes, D.N.A., Window Rock, Arizona, and Wilbert Tsosie, D.N.A., Shiprock, New Mexico, for Plaintiff-Appellee Wallace

Michael Stuhff, Legal Department of the Navajo Nation, Window Rock, Arizona, for Defendants-Appellants

JOHN, District Judge

## NATURE OF THE ACTION

Ths is an action in which plaintiffs, who are members of the Navajo Tribal Council, are seeking an application for a permanent injunction to enjoin Peter MacDonald, individually and as Chairman of the Navajo Tribal Council and Eldon Hansen, in his capacity as Con-

-341-

troller of the Navajo Nation from expending any monies from the $70,000.00 which was by Tribal Council Resolution appropriated on April 5, 1977 for the defense of defendant MacDonald in a criminal case then pending against him in the United States District Court in Phoenix, Arizona.

## SUMMARY

On April 4, 1977, a special session of the Navajo Tribal Council was called by defendant MacDonald and the Navajo Area Director of the Bureau of Indian Affairs.

The agenda prepared for the special session contained five substantive items. What was later enacted as Resolution CAP-32-77, and which gave rise to the controversy, was not one of those items. The Tribal Council approved the agenda by a vote of 54-0.

After the special session was underway, the Advisory Committee approved an addition to the agenda consisting of three items. One of those items was a resolution amending the budget for fiscal year 1977 to appropriate $70,000.00 for legal fees and expenses for defendant MacDonald's defense in a criminal case then pending against him in United States District Court in Phoenix, Arizona.

The proceedings for which the funds appropriated by CAP-32-77 were sought arose out of an indictment issued February 9, 1977 charging defendant MacDonald with eight felony counts. The

indictment alleged that defendant MacDonald, in his position as Chairman of the Navajo Tribal Council, defrauded an Arizona utility company doing business with the Navajo Tribe by obtaining money from the company for personal gain.

The Advisory Committee never did see the proposed resolution CAP-32-77 but approved its addition to the agenda for the special session; however, the Tribal Council never approved such an addition.

On April 5, 1977, the Council debated the above resolution at considerable length before approving it by a vote of 35 in favor and 19 against. Resolution CAP-32-77 was never presented to the Budget and Finance Committee of the Navajo Tribal Council.

During the debate on the resolution, the Chairman of the Budget and Finance Committee, Raymond Smith, attempted, without success, to gain the floor to raise a question as to why the Budget and Finance Committee was by-passed, but defendant MacDonald, who was presiding at the session, refused to acknowledge him and the resolution thus passed.

This action was filed on May 3, 1977, and a temporary restraining order was issued on the same day restraining defendant Hansen from paying out any monies pursuant to CAP-32-77, and the Court set May 18, 1977 at 2:00 p.m. for hearing the injunction.

Defendants MacDonald and Hansen filed motions for change of Venue and Disqualification of the presiding Judge on the 17th day of May -- a day prior to the hearing and the motions were denied. This Court heard arguments of both counsel and adduced testimony from plaintiffs and other witnessess on May 18, 1977.

## CONTENTION OF THE PARTIES

Plaintiffs contend that the appropriation pursuant to Resolution CAP-32-77 by Navajo Tribal Council absent Budget and Finance Committee review and recommendation is contrary to the laws of the Navajo Nation, and although the Navajo Tribal Council is the law making body of the Navajo Nation, they cannot place themselves above the laws they create and cannot act beyond the scope and authority of the laws they create without first duly amending or repealing those laws.

Plaintiffs further contend that the above referred to acts of the Council violate the mandate of 2 Navajo Tribal Code 365 and any appropriations such as CAP-32-77 in violation of Council procedures and the substantive law of the Navajo Nation is unlawful and void.

Defendants contend that the Navajo Tribal Council, being the only law making body in the Navajo Nation, has the Supreme Authority to do whatever they wish or desire absent any constitutional restriction on their powers, and their legislative actions are above judicial review, that this Court would be dictating legislation to the

-344-

Council if it decides this case.

There are a number of minor issues presented to this Court and will be considered in the opinion. The major issue is:

1. Absent any constitution, can the Navajo Tribal Council, as the supreme law making authority on the Navajo Nation, pass and enact legislation in violation of its procedural process and/or the mandate of the Navajo Tribal Code without first duly amending or repealing it?

The plaintiffs filed suit in the District Court of Shiprock, Navajo Nation, New Mexico to enjoin the allegedly unlawful expenditure of the Navajo Tribal Trust Funds under CAP-32-77. The complaint alleged that defendant MacDonald, as Chairman of the Navajo Tribal Council, was indicted by a Federal Grand Jury charging him with felony counts of defrauding an Arizona utility company which was doing business with the Navajo Tribe, and as result of that indictment the Navajo Tribal Council passed and approved Resolution CAP-32-77, which amended fiscal year budget '77, appropriating $70,000.00 of trust funds of the Navajo Nation for the legal defense and expenditures of defendant MacDonald.

This controversial legislation was the subject of a lengthy debate during the second day of a duly convened special session of the

-345-

Navajo Tribal Council on April 5, 1977. During this lengthy debate, plaintiff Raymond Smith, Chairman of the Budget and Finance Committee, attempted, several times without success to gain the floor to ask why the Budget and Finance Committee was by-passed in this instance as the matter dealt with a interim budget revision. Defendant, MacDonald, who was presiding over the session, refused to acknowledge plaintiff Smith. The resolution was then approved by simply a majority vote of 35 in favor and 19 opposed.

On April 28, 1977, the acting Area Director of the Bureau of Indian Affairs approved the resolution.

On May 3, 1977, this suit was filed and a temporary restraining order was granted the same day enjoining defendant Hansen from paying out any sums pursuant to CAP-32-77; however, the temporary restraining order was not served until May 11, 1977 for reasons not known to this Court.

On May 17, 1977, Defendants moved to dissolve the temporary restraining on the grounds that the temporary restraining order was issued in violation of Rule 18 of the Civil Procedure requiring notice and hearing; the temporary restraining order was issued in violation of Rule 18 of the Civil Procedure requiring the applicants to post a security bond; the full Navajo Tribal Council has the authority to approve the expenditure of Tribal funds to meet "emergent and unusual circumstances."; the Area Director of the Bureau of Indian Affairs has no power to approve or disapprove the agenda for any

-346-

session of the Tribal Council; the complaint fails to join as indispensable parties, the real parties in interest, the Navajo Nation, the Navajo Tribal Council and the United States; the provisions of 25 USC § 81 are inapplicable to any contract by which Peter MacDonald retains counsel to represent him in a criminal trial and the subject matter is a non-justicable political question. Defendant also filed motions to change venue to Window Rock District Court and to disqualify the Shiprock District Judge.

This Court must first deal with the motions for venue and disqualification. Defendants' motion for change of venue was received by the Court a day prior to the hearing on May 17, 1977. Since a trial date had been scheduled prior to the filing of the motion, and that it was received one day prior to date for hearing, arguments on the motion was held the same day the injunction was heard. Defendants' motion was denied. Defendants' contention that Rule 26 mandates that the action shall be filed in the district in which defendant resides is taken into consideration; however, venue is proper in this Court, for the convenience of the parties and witnesses, and furthermore it would be inappropriate to require every person seeking redress against tribal officials to travel to Window Rock to prosecute an action.

Defendants' motion to disqualify the District Judge, on the grounds that Counsel for plaintiff Donald Benally is a nephew to the judge, is also denied on the grounds that such a relationship does exist but only in traditional Navajo clan relationship.

-347-

The issue of the temporary restraining order being issued in violation of Rule 18 requiring the posting of a bond requires little attention from this Court. The plaintiffs are members of the Navajo Tribal Council with the exception of plaintiff Mary Wallace. Under our rules, the posting of bond is not required of officers of the Navajo Nation. The Court does, however, agree in part with defendants' contention that the temporary restraining order was issued in contra certain requirements in Rule 18; specifically, the requirement of the certification of counsel as to why the temporary restraining order should issue without notice. Since defendants did not move to dissolve within the two day requirement set forth in Rule 18, he has waived his rights to dissolve.

Defendants have also advanced the argument that the Navajo Tribal Council, Navajo Nation and the United States are indispensible parties. There is no need for joinder of the United States or of any other members of the Tribal Council, as they will not be adversely affected by the outcome of this suit. The Navajo Tribe has voluntarily appeared and fully participated in this action so that no joinder need be ordered.

During the course of this suit, all parties found no disagreement as to the supreme law making authority in the Navajo Nation being vested in the Navajo Tribal Council. This Court also vigorously supports that contention. The Power and Authority of constitutionless governments such as the Navajo Tribal Government was compared as similar with the law of England and Australia by defendants' counsel--law making authority is exclusively that of the governing

legislative body. In this case the argument which purports the Navajo Tribal Council, being the supreme law making authority, has unchecked power to enact any legislation it deems fit, even those which violate existing law, makes this Court very uneasy in view of the ancient phrase from 11 Coke, 74 NIHIL ALIUD POTEST REX QUAM QUOD DE JURE POSTEST (The king can do nothing except what he can by law do).

It is well settled that the Navajo Nation is not a lawless Nation. Its governmental powers are limited by laws--laws enacted by the Congress of the United States, by the Navajo Tribal Council (Codified in the Navajo Tribal Code), and the Treaty of 1868.

The Navajo Tribal Council, in an effort for more efficiency, established for itself various procedural mechanism by which proposed resolutions are to be brought before it for consideration--they were subsequently codified in the Navajo Tribal Code. Once the Council passes and approves any resolution binding themselves by that law--they are bound by such law--they are then bound by such law and can only do what by law they themselves established allows them to do. The Navajo Tribal Council cannot violate their laws nor can they place themselves above the laws they create. If such a government were to exist in the Navajo Nation, it would violate all the principles of a democratic government.

Tribal Council Resolution CAP-32-77 was an interim budget revision as the term is used in 2 Navajo Tribal Code § 365. The lan-

guage of that section of the code is not ambiguous. It clearly mandates that such an interim budget revision shall be reviewed for approval or disapproval by the Budget and Finance Committee of the Navajo Tribal Council before it is submitted for Tribal Council consideration. In this instance, the Budget and Finance Committee did not have an opportunity to exercise their mandate and the budget revision in the form of CAP-32-77 went directly from the Advisory Committee to the Council. It was stipulated by counsel for defendants that the Code § 365 clearly is the controlling factor in this matter.

The passage of CAP-32-77 was in violation of 2 Navajo Tribal Code § 365 there being no lawful basis existing for any departure therefrom. This Court does not dispute the authority of the Council to expend funds from the Tribal Trust account for "emergent or unusual circumstances." However, no testimony offered by defendants that the situation giving rise to CAP-32-77 was an emergency or an unusual circumstance. There was testimony that the Council has in the past appropriated monies without review by the Budget and Finance Committee. The consensus is that the Council normally approves community projects grants without Budget and Finance Committee review, or during severe drought or storm conditions such as the 1968 devastating snow storms.

The manner in which the Council approved CAP-32-77 is a radical departure from that established practice. The appropriation for community projects or drought and other storm relief benefits multitudes of Navajos--not just one individual as in Resolution CAP-32-77. In this

-350-

regard, Resolution CAP-32-77 constitutes appropriation of public funds for a purely private purpose.

It is a fundamental principle of law that public funds may not be used for private purposes, and that any such use must be declared invalid, and that principle must apply to funds of the Navajo Tribe.

The question of misappropriation of tribal funds by the Tribal Council is not a non-justiciable political question; the Navajo District Courts are fully able to measure the action taken against the existing law, and to determine whether the law has been violated, and when called upon to do so in a proper case, the Courts may not decline the obligation. Thus, as in this case for Navajo District Courts to rule as to the legality of an action of the Tribal Council, it no violation of the principle of separation of powers in the Tribal government.

This case presents appropriate grounds for invoking this Court's equitable powers to prevent any further expenditures of Tribal Funds under CAP-32-77, in that there is no adequate remedy at law to prevent such funds from being disbursed and once they are disbursed the likelihood is that they could not be recovered.

Resolution CAP-32-77 was unlawfully brought before the Tribal Council, because of the failure to comply with 2 Navajo Tribal Code § 365, and it is unlawful on its fact in that it appropriates public monies purely for private purpose; therefore, a permanent injunction is granted.